# United States Court of Appeals
## For the First Circuit

———————————

No. 17-2211

CYNTHIA L. MERLINI,

Plaintiff, Appellant,

v.

CANADA,

Defendant, Appellee.

———————————

Before

Howard, Chief Judge,
Torruella, Lynch, Thompson, Kayatta, and Barron, Circuit Judges.

———————————

**ORDER OF COURT**

Entered: October 23, 2019

The petition for rehearing having been denied by the panel of judges who decided the case, and the petition for rehearing en banc having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the petition for rehearing and the petition for rehearing en banc be denied.

**TORRUELLA, Circuit Judge**. I voted in favor of granting en banc review because this appeal raises "a question of exceptional importance." See Fed. R. App. P. 35(a)(2).

**LYNCH**, **Circuit Judge, with whom HOWARD, Chief Judge, joins, dissenting from the denial of rehearing en banc**. We regret that this court has denied en banc review. We urge the Supreme Court to grant review in this important case about the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 et. seq. The opinion rests on what we view as significant misreadings of FSIA and of Supreme Court FSIA precedent. Further, the opinion ignores the clear text of the FSIA statute and impermissibly relies on supposed legislative history -- not text -- to create distinctions not in the statute. In our view, the decision is inconsistent with the views of other circuits, creating a circuit conflict, and is in derogation of principles of comity and international law.

Predictably, the majority opinion will precipitate a reciprocal effect on this country's foreign affairs at its numerous embassies and legations abroad, and, as the State Department has plainly stated, these effects will be adverse to our national interest. The

consequences are far reaching: in this circuit alone, this opinion subjects over forty foreign consulates to the many variations in local and state laws that are contrary to matters that were determined by such countries' legislatures.

The core legal issue is what conduct Merlini's claim against Canada is "based upon." See Saudi Arabia v. Nelson, 507 U.S. 349, 356 (1993); OBB Personenverkehr AG v. Sachs, 136 S. Ct. 390, 396 (2015). Here, the correct answer should have been that the claim is based upon Canada's sovereign choice, by legislation, to have its own workers' compensation scheme for all of its government employees, including those at its Boston consulate. In focusing on a downstream consequence of Canada's sovereign decision instead of the decision itself, the majority opinion misreads the text of FSIA and misconstrues Nelson, Sachs, and Republic of Argentina v. Weltover Inc., 504 U.S. 607 (1992). The opinion also conflicts with cases from the D.C., Second, and Ninth Circuits. See Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek, 600 F.3d 171 (2d Cir. 2010); Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020 (D.C. Cir. 1997); Gregorian v. Izvestia, 871 F.2d 1515 (9th Cir. 1989); MacArthur Area Citizens Ass'n v. Republic of Peru, 809 F.2d 918 (D.C. Cir. 1987).

Beyond that, the opinion's assertion that its rationale will lead to the loss of Canada's sovereign immunity only as to low-level workers (for which it cites a House Committee Report),[1] itself violates rules of statutory interpretation. Nothing in the text of FSIA carves out differential treatment based on the perceived level or relative importance of a worker's responsibilities. See 28 U.S.C. § 1605 (laying out "[g]eneral exceptions to the jurisdictional immunity of a foreign state").[2] The opinion thus violates the tenet that legislative history may not be used to alter text. See Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2364 (2019) ("Even those of us who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" (quoting Milner v. Dep't of Navy, 562 U.S. 562, 572 (1999))); Chamber of Commerce of U.S. v. Whiting, 563 U.S. 582, 599 (2011) ("[Congress's] authoritative statement is the statutory text, not the legislative history." (quoting Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 568 (2005))); Shannon v. United States, 512 U.S. 573, 584 (1994) ("[C]ourts have no authority to enforce a principle gleaned solely from legislative history that has no statutory reference point." (alterations omitted) (quoting Int'l Bhd. of Elec. Workers, Local Union No. 474 v. NLRB, 814 F.2d 697, 712 (D.C. Cir. 1987))).

---

[1] The House Report itself may not be relied on, even if use of legislative history were appropriate. See Am. Broad. Cos., Inc. v. Aereo, Inc., 573 U.S. 431, 457-58 (2014) (Scalia, J., dissenting) (cautioning against using "a few isolated snippets of legislative history" from a committee report "as authoritative evidence of congressional intent even though they come from a single report issued by a committee whose members make up a small fraction of one of the two Houses of Congress"); NLRB v. Health Care & Ret. Corp. of Am., 511 U.S. 571, 582 (1994) ("[I]t is the function of the courts and not the Legislature, much less a Committee of one House of the Legislature, to say what an enacted statute means." (quoting Pierce v. Underwood, 487 U.S. 552, 566 (1988))).

[2] Indeed, Canada's legislation rejected that distinction. See Government Employees Compensation Act, R.S.C. 1985, c. G-5 § 7(1) (Can.) (applying to all "locally engaged" employees).

As said in <u>Boos</u> v. <u>Barry</u>, 485 U.S. 312, 323-24 (1988), this country protects other countries' sovereign immunity so that "similar protections will be accorded to [the U.S. abroad]." <u>See also</u> <u>Bolivarian Republic of Venezuela</u> v. <u>Helmerich & Payne Int'l Drilling Co.</u>, 137 S. Ct. 1312, 1322 (2017); <u>Nat'l City Bank of N.Y.</u> v. <u>China</u>, 348 U.S. 356, 362 (1955). The State Department has told us that "many foreign nationals employed by U.S. embassies and consulates -- including Canadian citizens employed by the United States in Canada -- are currently entitled to workers' compensation benefits in virtue of United States law, not local law." <u>See</u> Federal Employees' Compensation Act, 5 U.S.C. § 8101, <u>et. seq.</u>[3] The majority's conclusion that Canada's administration of its own statutory workers' compensation scheme here is not protected by its sovereign immunity leads to the conclusion that our government's similar actions as to employees, foreign or American, of its consulates and embassies will not be granted immunity.[4] By denying Canada's choice to implement a federal workers' compensation scheme the respect and deference it is entitled to, the consequences of the opinion will likely be that FECA -- Congress's choice of comprehensive workers' compensation -- will not be given that deference. We do not believe Congress intended such an outcome.

For these reasons, we dissent.

By the Court:

Maria R. Hamilton, Clerk

cc:
Hon. Nathaniel M. Gorton
Robert Farrell, Clerk, United States District Court for the District of Massachusetts
Theodore Joel Folkman
Chrisann Leal
Simon A. Steel
Sharon Swingle
Andrew E. Lelling
Noel J. Francisco
Michael Shih

---

[3] The Federal Employees' Compensation Act (FECA), first enacted in 1916, is the "exclusive measure of compensation" for federal employees with work-related injuries or illnesses, including non-citizen, non-resident employees working outside of the United States. 20 C.F.R. § 25.2(d); <u>see</u> <u>Johansen</u> v. <u>United States</u>, 343 U.S. 427, 440 (1952) (describing FECA as a "system[] of simple, certain, and uniform compensation for injuries or death" designed "to make a workable, consistent, and equitable whole" (citation omitted)).

[4] The United States embassies, consulates, and legations abroad would have to conform not only to a foreign country's contrary national laws, but also a range of sub-national and regional laws (say, from a particular canton, state, or province). Here, a sub-national law, from Massachusetts, creates the perceived conflict. In a country where the United States is operating multiple diplomatic posts (which is true in numerous countries; for example, there are about nineteen posts in Mexico), the opinion would have the United States operate different schemes and systems for foreign nationals employed in the <u>same</u> country, doing essentially the <u>same</u> job.