Fawwaz ZEDAN, Appellant,

v.

**KINGDOM OF SAUDI ARABIA.**

No. 87–7205.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1988.
Decided June 24, 1988.

Linda Huber, Washington, D.C., for appellant.

Maureen E. Mahoney, Washington, D.C., for appellee.

Before WALD, Chief Judge, STARR and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant Fawwaz Zedan filed this action against the Kingdom of Saudi Arabia. He seeks damages in the amount of $632,860 caused by Saudi Arabia's failure to honor its alleged agreement to guarantee appellant's salary and share of profits due him under a separate contract with a Saudi Arabian corporation engaged in road construction in Saudi Arabia. Saudi Arabia moved to dismiss the suit on the grounds that the district court lacked jurisdiction under the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1602–1611 (1982). The district court granted Saudi Arabia's motion, and we affirm.

## I.

Appellant, Fawwaz Zedan, is an American citizen.[1] In 1980, while he was residing in California, Zedan received a telephone call from a representative of Prince Sultan, the royal overseer of the Arab Service Office, recruiting him to come to Saudi Arabia to work as an engineer on the Riyadh Outer Ring Road Project. The Arab Service Office, which was in charge of construction of some of the components of the Outer Ring Road Project, sponsored appellant's visa to travel to Saudi Arabia. Appellant does not allege that the Arab Service Office is an agency of Saudi Arabia. For the first five months of appellant's stay he worked on the roadway, apparently as an employee of the Arab Service Office, although this is not clear from either Zedan's affidavit or his complaint. After he had been in Saudi Arabia for five months, appellant entered into a five-year employment contract with Sheik Al–Muraibidh, who managed a corporation known as the Al–Muraibidh Establishment. The contract provided for a monthly salary and a percentage of net profits. Neither does appellant allege that this corporation is an agency of Saudi Arabia.

By April 1983, the Ministry of Communications, an agency of Saudi Arabia, became disturbed by the lack of progress on the roadway and took control of the construction, placing appellant in charge of the whole project. At that time, the Ministry of Communications guaranteed payment of the contractual salary and share of profits due appellant under his contract with the Al–Muraibidh Establishment. The roadway was completed in September 1983, and appellant left Saudi Arabia a few days later to rejoin his family in the United States. At his departure, appellant had not yet been paid the money due him under the contract with Al–Muraibidh and subsequently guaranteed by the Ministry of Communications. In his affidavit, appellant states that he "was assured" (by someone unidentified) that the money would be forwarded to him.

## II.

Appellant asserts that the district court has jurisdiction over Saudi Arabia under the Foreign Sovereign Immunities Act. The relevant section of the FSIA, section 1605, provides that:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . .

(2) in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United

---

**1.** For purposes of this appeal from the dismissal of the complaint, we accept as true the allegations of fact contained in plaintiff's complaint and affidavits. *See Scheurer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

Appellant argues that the district court has jurisdiction over Saudi Arabia under each of the three clauses of subsection 1605(a)(2), and so we take up each clause in turn.

■ Under the first clause, a district court has jurisdiction where the action is "based upon a commercial activity carried on in the United States by the foreign state." It is undisputed that the building of the roadway and all subsequent dealings between appellant and Saudi Arabia or its agencies were carried on in Saudi Arabia. Appellant's argument is, however, that the recruitment phone call is the necessary commercial activity conducted in the United States. Section 1603(e)—somewhat redundantly—defines "commercial activity carried on in the United States by a foreign state" as "commercial activity carried on by such state and having substantial contact with the United States." The district court, it seems agreed by both parties, thus had jurisdiction over Saudi Arabia under this clause only if that single phone call to Zedan constitutes a "substantial contact with the United States." The legislative history gives several examples of what is meant by "substantial contact." These include:

cases based on commercial transactions performed in whole or in part in the United States, import-export transactions involving sales to, or purchases from, concerns in the United States, business torts occurring in the United States (cf. § 1605(a)(5)), and an indebtedness incurred by a foreign state which negotiates or executes a loan agreement in the United States, or which receives financing from a private or public lending institution located in the United States—for example, loans, guarantees or insurance provided by the Export–Import Bank of the United States.... This definition, however, is intended to reflect a degree of contact beyond that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff.

H.R. REP. No. 1487, 94th Cong., 2d Sess. 17 (1976) ("House Report"), U.S.Code Cong. & Admin.News 1976, pp. 6604, 6615, 6616. It would seem then a contractual arrangement, one part of which is to be performed in the United States, constitutes a substantial contact with the United States. But appellant does not allege that he entered into a contract of any sort during the recruitment phone call. At most, he claims that that contact was a preliminary step in a chain of events leading to the guarantee entered into nearly two-and-one-half years later. Nothing in the legislative history suggests, however, that Congress intended jurisdiction under the first clause to be based upon acts that are not themselves commercial transactions, but that are merely precursors to commercial transactions.

We have previously held, moreover, that this substantial contact requirement is stricter than that suggested by a minimum contacts due process inquiry, and that isolated or transitory contacts with the United States do not suffice. *Maritime Int'l Nominees Establishment v. Guinea*, 693 F.2d 1094, 1109 (1982), *cert. denied*, 464 U.S. 815, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983). In that case we concluded the substantial contact requirement was not met even where a representative of the foreign sovereign engaged in two business meetings with the plaintiff in the United States. *Id.* If actual business meetings do not satisfy the substantial contacts test, then a recruitment phone call, in which no contract is agreed upon—which seems to us analogous to the placement of an advertisement in a local California newspaper inviting job applicants to go to Saudi Arabia—cannot itself be deemed a substantial contact. In the words of the House Report, the degree of contact here is essentially no more than "that occasioned simply by U.S. citizenship or U.S. residence of the plaintiff."

To be sure, appellant's suit is not actually based upon the recruitment phone call (the phone call is not even mentioned in appellant's complaint), but rather on the guarantee entered into over two years later. Appellant's theory is, that an "unbroken connection" ties his recruitment in

the United States, his employment by Sheik Al–Muraibidh, his subsequent assignment to work directly for the Ministry of Communications, and the Ministry's guarantee of payment of sums due under his contract with Sheik Al–Muraibidh. He relies on *Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C.Cir.1982), in which the plaintiff alleged that he contracted with defendants in the United States and that defendants actively colluded in the United States to entice plaintiff to travel to Ireland, where they stole his expertise and patent rights. The court observed:

> Section 1605's "based upon" standard is satisfied if plaintiff can show a *direct* causal connection between his enticement in the United States and the misappropriations in Ireland giving rise to his claims for an accounting, or if he can show that enticement is an element of the cause of action under whatever law governs his claims.

*Id.* at 1027 n. 22 (emphasis added). The link between a recruitment phone call in California and the guarantee two-and-one-half years and two employers later is, in our view, too attenuated to constitute a "direct causal connection." Under appellant's theory, our jurisdiction would extend to any and all disputes between Zedan and Saudi Arabia subsequent to the phone call, merely because but for that call Zedan would not have traveled to Saudi Arabia.

\* \* \* \* \* \*

■ Jurisdiction is found under clause two of section 1605(a)(2) if the action is based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." Although appellant suggests in passing that this clause also supports jurisdiction, his suit clearly is not based "upon an act performed in the United States," but upon a contract entered into in Saudi Arabia, so clause two is also inapplicable. The legislative history is crystal clear in this regard; the House Report states that "the acts (or omissions) encompassed in this category are limited to those which in and of themselves are sufficient to form the basis of a cause of action." House Report at 19, U.S.Code Cong. & Admin.News 1976, p. 6618; *see also Maritime Int'l Nominees Establishment*, 693 F.2d at 1104 n. 16.

\* \* \* \* \* \*

■ Clause three provides for jurisdiction where an act occurs outside the United States and causes a direct effect in the United States. A direct effect is one that is substantial and foreseeable. *Transamerican S.S. v. Somali Democratic Republic*, 767 F.2d 998, 1004 (D.C.Cir.1985); *Maritime Int'l Nominees Establishment*, 693 F.2d at 1111. Appellant contends that Saudi Arabia's failure to honor the contract has a direct effect in this country, because of the financial destitution he has suffered (leading to the dissolution of his marriage). But financial hardship fortuitously suffered *in the United States* is not a direct effect of Saudi Arabia's failure to honor a contract in Saudi Arabia. Upon leaving Saudi Arabia, appellant did not have to return to the United States, and the jurisdiction of our courts cannot turn upon the happenstance of appellant's travel arrangements. *See Maritime Int'l Nominees Establishment*, 693 F.2d at 1108.

Still appellant claims that just before he left Saudi Arabia the Ministry of Communications promised to forward the amount owed him under the guarantee, thereby suggesting the existence of a new contract (or a modification of the prior guarantee) to make payment in the United States. And the violation of *that* new agreement, appellant argues, had a foreseeable, direct effect in the United States. This alleged modification, however, is not even obliquely referred to in the complaint, and the affidavit itself states only that appellant was "assured that the money would be forwarded to [him]." That suggests only that the purported modification required Saudi Arabia to forward the money to appellant *wherever* he chose to travel. No allegation is made that the new contract (assuming arguendo, consideration) required that the money be forwarded to a specific address in the United States, or even to a particular

city.[2]

Prior cases construing the "direct effect" language provide appellant inadequate support. In *Transamerican S.S.*, 767 F.2d 998 (1985) we held that where a foreign sovereign caused an American corporation to transfer funds from its bank in the United States to the foreign sovereign's bank (also in the United States), and caused the American corporation to incur debts in the United States, the foreign sovereign had caused a "direct effect in the United States." And in *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300 (1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), the Second Circuit held that a foreign sovereign's instruction to its bank in New York not to pay on letters of credit submitted by American corporations to the New York bank in New York pursuant to a contract to ship cement from the United States to Nigeria had a direct effect in the United States. These cases, according to appellant, establish that any action which causes a plaintiff to suffer financial loss in the United States satisfies the "direct effect" test, and he therefore argues that Saudi Arabia's failure to forward payment to him similarly caused a direct effect in this country insofar as he suffered financial loss here. But in neither *Transamerican S.S.* nor *Texas Trading* was financial loss in this country itself sufficient. In each of these cases, something legally significant actually happened in the United States; a bank refused to pay on a letter of credit, money was transferred, a debt was incurred. In each case, therefore, the foreign sovereign caused a "substantial" and "direct and foreseeable" effect in the United States. *Transamerican S.S.*, 767 F.2d at 1004.

Appellant's situation is more akin to that considered in the line of cases holding that the "eventual effect in the United States of the personal injury or death of an American citizen while abroad is not direct within the meaning of the Act even if the foreign government agency might foresee that a United States citizen might be injured while travelling or working in its territory." *Zernicek v. Brown & Root, Inc.*, 826 F.2d 415, 418 (5th Cir.1987) (citing cases), *cert. denied*, — U.S. —, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). Appellant's injury, while financial rather than personal, was definitely suffered in Saudi Arabia, for it was there that the Ministry of Communications breached its contract with him. While it is true that the breach continued after appellant left Saudi Arabia, the breach's effect in the United States cannot be said to be direct, for this effect is due to an intervening event—appellant's return here. *See Upton v. Empire of Iran*, 459 F.Supp. 264, 266 (D.D.C.1978) ("The common sense interpretation of a 'direct effect' is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption."), *aff'd mem.*, 607 F.2d 494 (D.C.Cir.1979). If anything, a tourist who is injured abroad, returns home, and continues to incur medical bills in this country presents a stronger case for a "direct effect in the United States" than does appellant, whose injury does not increase in the United States, and yet courts have uniformly held that a personal injury suffered abroad does not cause a direct effect in this country. *Zernicek*, 826 F.2d at 418. As Saudi Arabia's breach of contract in Saudi Arabia did not have a direct effect in the United States, the district court had no jurisdiction under the third clause of section 1605.

The judgment below is therefore

*Affirmed.*

---

**2.** While we do not reach the question whether a breach of a specific contract to make a payment in the United States, where the commercial activity involved was carried on entirely outside the United States, would be sufficient to cause a direct effect within the meaning of clause three, we think the terms of such a contract would, at the very least, have to specify a particular location in the United States, even perhaps the particular bank through which payment was to be made, before the breach could be said to cause a substantial, direct, and foreseeable effect in the United States.