144 F.Supp.2d 1140 (2001)
BP CHEMICALS LTD., Plaintiff,
v.
JIANGSU SOPO CORPORATION, LTD., et al., Defendants.
No. 4:99CV323 CDP.
United States District Court, E.D. Missouri, Eastern Division.
May 29, 2001.
Mark S. Deiermann, Charles A. Weiss, Partner, Daniel A. Crowe, Associate, Bryan Cave LLP, St. Louis, MO, Robin G. Weaver, Daniel L. Brockett, Harris A. Senturia, James W. Satola, Squire and Sanders, Cleveland, OH, for Plaintiff.
Kenton E. Knickmeyer, Partner, Michael D. O'Keefe, Sr., Partner, Thompson *1141 Coburn, St. Louis, MO, Salem M. Katsh, Jaculin Aaron, Alex V. Chachkes, Shearman and Sterling, New York City, Allen S. Boston, Richard A. Wunderlich, Lewis and Rice, St. Louis, MO, for Defendants.

MEMORANDUM AND ORDER
PERRY, District Judge.
This is a trade secret case brought by BP Chemicals Ltd. (BP), a British corporation, under the Missouri Uniform Trade Secrets Act (MUTSA), Missouri common law, § 44(b) and (h) of the Lanham Act, 15 U.S.C. § 1126(b) and (h), and Article 10 bis of the Paris Convention for the Protection of Industrial Property. BP alleges that Chinese defendants Jiangsu Sopo Corporation (Group) Ltd. ("Sopo") and Shanghai Petrochemical Engineering Co. ("SPECO") wrongfully acquired BP trade secrets[1] and ultimately incorporated them into Sopo's acetic acid plant located in China (the "921 plant"). Defendant Nooter Corp., a Missouri corporation, manufactured key components of the 921 plant. Sopo and SPECO allegedly sent bid packages and technical specifications containing BP's trade secrets to Nooter and to several other United States companies that also provided equipment or supplies for the plant.[2]
SPECO has defaulted, and BP has reached a settlement agreement with Nooter. Sopo has moved to dismiss, arguing that it is immune from suit under the Foreign Sovereign Immunities Act (FSIA), that this court lacks personal jurisdiction over it under due process principles, and that, under the doctrine of forum non conveniens, China is the appropriate forum for this case. BP has moved to amend its complaint and to compel jurisdictional discovery. I conclude that the FSIA renders Sopo immune from this suit. I also conclude that BP's proposed amendments to its complaint would be futile, and that the discovery BP seeks would not change the jurisdictional problems in this case. Accordingly, I will grant the motion to dismiss and deny BP's motions.

I. Background

Sopo wholly owns a small subsidiary in Texas, but otherwise does no business in the United States. It is undisputed that the acetic acid produced by the 921 plant is sold exclusively within the Chinese market.
In 1992, Sopo and SPECO entered into a general contract for the manufacture of the 921 plant. SPECO's responsibilities under the contract included "procurement, manufacturing, testing, and transport of all equipment" for the plant. All supply contracts with Nooter and other United States vendors were executed by SPECO, not by Sopo itself. There is no evidence that Sopo sent any direct communications to the United States vendors, although Sopo employees visited the vendors in the United States for training and equipment inspections. BP alleges, however, that SPECO was Sopo's agent and that SPECO's contacts with the United States should therefore be attributed to Sopo for jurisdictional purposes. Moreover, BP's proposed second amended complaint adds allegations that Sopo and SPECO conspired with others to misappropriate BP's trade secrets.
*1142 The parties have presented little evidence of where Sopo may have acquired BP's trade secrets. What evidence there is, however, strongly points to an acquisition in either China or Taiwan. The Amended Complaint states that "[t]he 921 Project appears to have been modeled on technology from two BP Chemicals licensed projects in Asia: one in Shanghai, PRC, ... and the other in Taiwan.... The [Shanghai] license was issued in 1993 and the [Taiwanese] license was issued in 1980." The Amended Complaint also alleges that "BP Chemicals has documents showing word-for-word copying of ... material specifications, right down to typographical errors present in both the 921 ... and Shanghai Wujing ... project specifications." The Amended Complaint goes on to allege in considerable detail other suspicious similarities between the 921 and the Shanghai and Taiwanese project specifications. The Amended Complaint nowhere suggests that Sopo attained the information from any source other than one in Shanghai or Taiwan. Indeed, the Amended Complaint suggests that some of the technology could not have been acquired from another source. For example, the Amended Complaint alleges that the 921 promoter reactor "is virtually identical to the [Taiwanese project] design in overall length and diameter," and that "[t]he [Taiwanese] promoter reactor was itself an unusual, half-size vessel, which was not duplicated in subsequent [BP] licensed plants."

II. Discussion

The FSIA provides the only basis for exercising jurisdiction over a foreign state in the courts of the United States. Saudi Arabia v. Nelson, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). Under the FSIA, foreign sovereigns are immune from suit in the United States except to the extent that the Act provides otherwise. 28 U.S.C § 1604; Nelson, 507 U.S. at 355, 113 S.Ct. 1471. If a foreign state has made a prima facie showing of immunity, the burden is on the party seeking to invoke the court's jurisdiction to show that one of the FSIA's exceptions applies. General Elec. Capital Corp. v. Grossman, 991 F.2d 1376, 1382 (8th Cir.1993).
BP does not dispute that Sopo is a presumptively immune "foreign state" under the FSIA. BP argues, however, that the "commercial activities" exception found in 28 U.S.C. § 1605(a)(2) subjects Sopo to this court's jurisdiction. Section 1605(a)(2) provides three circumstances in which a foreign state's commercial activities subject it to jurisdiction in United States courts. A foreign state is not immune from jurisdiction where
the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
Id. BP argues that either of the first two clauses of § 1605(a)(2) provides a basis for jurisdiction over Sopo. Although I do not believe that BP has shown that SPECO was acting as Sopo's agent, I will assume for purposes of this decision that agency exists and that all of SPECO's activities relating to the 921 plant are attributable to Sopo. I do this because it demonstrates that even if SPECO were Sopo's agent, jurisdiction would still not be proper.

A. The First Clause of § 1605(a)(2)

The first clause of § 1605(a)(2) requires that the cause of action be "based upon a commercial activity carried out in the United States." A commercial activity *1143 is carried out "in" the United States if the commercial activity has "substantial contact with the United States." 28 U.S.C. § 1603(e). Accordingly, the issues under the first clause of § 1605(a)(2) are whether Sopo engaged in commercial activity having "substantial contact" with the United States, and, if so, whether BP's lawsuit is "based upon" that commercial activity.
The initial step in determining whether the first clause applies is to identify all instances of "commercial activity" that arguably provide a basis for jurisdiction under § 1605(a)(2). See, e.g., Grossman, 991 F.2d 1376, 1382-83 (court began its analysis by identifying relevant "commercial activity"). Sopo has engaged in two instances of "commercial activity" that arguably provide a basis for jurisdiction under § 1605(a)(2). First, Sopo engaged in the commercial activity of constructing and operating the 921 plant in China. Secondly, Sopo engaged in the commercial activity of contracting with United States vendors to provide equipment for the 921 plant.
Sopo's construction and operation of the 921 plant cannot serve as the predicate commercial activity under the first clause of § 1605(a)(2) because this commercial activity did not occur "in the United States." In Grossman, the Eighth Circuit shed significant light on when a commercial activity occurs "in" the United States for purposes of § 1605(a)(2). Id. at 1383. That case arose from a transaction in which Air Canada, a state-owned Canadian corporation, bought Gelco Express United (Express), a Canadian subsidiary of an American parent. The parties to the sale engaged in one early negotiation session in Minnesota and exchanged letters, faxes, and telephone calls in the United States. In particular, the Canadian accounting firm that audited Express in connection with the sale sent Express's financial statements and a certification of net equity to the American parent. The court nevertheless concluded that the sale transaction did not occur "in" the United States. The court reasoned that the purchase "occurred primarily in Canada" because most negotiations occurred there. Id. The accounting firm's act of sending financial documents to the United States was "but one small part of a significant transaction." Id.
Likewise, in this case, Sopo's construction of the 921 plant "occurred primarily" in China. Although SPECO contracted with United States vendors and visited the United States in order to procure equipment for the 921 plant, these procurement activities were a relatively small part of the larger process of building the plant. Moreover, Sopo operates the plant in China and sells the acetic acid produced by the plant exclusively within the Chinese market. Sopo's construction and operation of the 921 plant does not amount to commercial activity "in" the United States.
Although SPECO's vendor contracts themselves likely amount to commercial activity occurring in the United States, this commercial activity cannot serve as the predicate for jurisdiction under the first clause of § 1605(a)(2) because this lawsuit is not "based upon" the contracts. In Nelson, the Supreme Court explained that the "based upon" terminology requires that the cause of action have a nexus stronger than "a mere connection with, or relation to" commercial activity within the United States. Nelson, 507 U.S. at 358, 113 S.Ct. 1471. The Court concluded that "the phrase is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." Id. at 357, 113 S.Ct. 1471. In other words, a court must focus on the gravamen of the complaint in determining whether the cause of action is "based upon" commercial activity in the United States.
*1144 In Nelson, the Saudi government recruited the plaintiff to work in a hospital in Saudi Arabia. The plaintiff alleged that he was later arrested and tortured by the government in retaliation for his attempts to complain about unsafe conditions in the hospital. The Supreme Court held that, although Saudia Arabia's recruitment of Nelson within the United States "led to the conduct that eventually injured" Nelson, the recruitment was "not the basis" of Nelson's suit. Id. The Court reasoned that the plaintiffs "ha[d] not ... alleged breach of contract ... but personal injuries caused by [Saudi Arabia's] intentional wrongs" within Saudi Arabia. Id.
Similarly, in this case, although SPECO engaged in procurement activity in the United States which led to the conduct that eventually injured BP, this activity in the United States is "not the basis" of BP's suit. At its core, this lawsuit concerns Sopo's acquisition of BP's technology in an unknown place and Sopo's commercial exploitation of that technology in China. Support for this conclusion can be found in BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254 (3d Cir.2000), a case strikingly similar to the present one. In Formosa Chemical, like in this case, BP Chemicals alleged that an Asian company had misappropriated its methanol carbonylation process for manufacturing acetic acid. The Asian company had allegedly contracted with United States vendors to supply components of its acetic acid plant. In holding that the personal jurisdiction over the Asian defendant was lacking, the Third Circuit indicated that the gravamen of the lawsuit was unrelated to the United States:
In this case [the defendant's] alleged misappropriation and improper use of BP's trade secrets have occurred and continue to occur in Taiwan. The primary alleged injury to BP has occurred and continues to occur in Great Britain. Thus, the primary tortious conduct giving rise to BP's claim against [the defendant] and to the injury caused thereby is unrelated to the United States.
Id. at 261.
BP attempts in its pleadings to characterize its case as one "based upon" commercial activity in the United States by emphasizing that its trade secrets were disclosed to the United States vendors in the course of SPECO's and Sopo's procurement activities. Yet, the Supreme Court's opinion in Nelson reveals that a plaintiff cannot always create jurisdiction under the FSIA merely by crafting his allegations around the defendant's contacts with the United States. In Nelson, the complaint included a claim for negligent failure to warn. The gist of this claim was that the Saudi government was negligent in its recruiting activities within the United States in that it failed to warn the plaintiff that he might be subject to imprisonment and torture in Saudi Arabia. The Court rejected this claim as a "semantic ploy," reasoning that a plaintiff could too easily recharacterize any intentional tort claim in this manner. Nelson, 507 U.S. 349, 363, 113 S.Ct. 1471, 123 L.Ed.2d 47.
Although this is perhaps a closer case than Nelson, I have little difficulty concluding that the alleged disclosures of BP's trade secrets to the United States vendors are not the basis of this lawsuit. Not one of BP's claims would require proof of any of the acts alleged to have occurred within the United States. Although BP claims that the disclosures to the United States vendors constitute unlawful "use" of its trade secrets, Sopo's "use" of the information in manufacturing acetic acid in China is far more central to this case than its "use" of the information in the course of its procurement activities. I note in this regard that some of the United States vendors apparently already possessed the BP *1145 technology as a result of having supplied equipment for other acetic acid plants. I also note that BP has presented no evidence that United States vendors have unlawfully disclosed the technology to others, or that there is any significant risk that they will do so.

B. The Second Clause of § 1605(a)(2)

The second clause of § 1605(a)(2) requires that the suit be based upon "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." My conclusion that this case is not "based upon" Sopo's procurement activities in the United States disposes of BP's argument that this clause applies; BP has identified no other "act" of Sopo's within the United States that could provide a basis for this lawsuit.
I note also that the Eighth Circuit in General Electric indicated that the second clause can only be invoked when defendants' acts within the U.S. "in and of themselves are sufficient to form the basis of a cause of action." General Electric, 991 F.2d at 1384 (citing Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511 (D.C.Cir. 1988)). This language seems to mean that in order for the second clause to apply, the facts establishing all elements of the plaintiff's claim must have occurred within the United States.
Contrary to BP's assertion, Sopo's activities within the United States are not sufficient to establish a cause of action. All that Sopo allegedly did in the United States was disclose BP's trade secrets to the United States vendors. This act if proved would not itself establish a trade secret misappropriation. For BP to prevail on a misappropriation theory, it would also have to show that Sopo acquired the information in an unlawful manner. E.g. BP Chemicals, Ltd. v. Baloun, No. 4:98CV932 RWS (E.D.Mo. Oct. 11, 2000) (holding that a "misappropriation" under Mo.Rev.Stat. § 417.450(b)(a) requires both an improper acquisition and ultimate disclosure); Restatement of Torts § 757(a) (1939) (stating that the critical inquiry is whether the defendant obtained the secret by "improper means"). Although the general rule is that a plaintiff may prove improper acquisition by way of circumstantial evidence, e.g. Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc., 35 F.3d 1226, 1239 (8th Cir.1994), this rule in no way absolves the plaintiff of the burden to prove this element.
In this case, there is no evidence, circumstantial or otherwise, that Sopo acquired BP's technology within the United States. As previously noted, all evidence suggests that Sopo acquired the information from a Chinese or a Taiwanese source. Accordingly, even if the first clause of § 1605(a)(2) were applicable to this case, the second clause would nevertheless be inapplicable because Sopo's acts within the United States are not sufficient to form the basis of a cause of action. I will grant Sopo's motion to dismiss.

C. BP's Motion to Amend

BP's proposed second amended complaint makes three significant changes. First, it adds as a defendant Shanghai Sopo Chemical Design Engineering Co., Ltd. (Sopo Engineering), which BP alleges is a subsidiary of defaulting defendant SPECO. Secondly, it adds a cause of action for conspiracy under Missouri common law. Thirdly, it eliminates defendant Nooter, with whom it has settled.
Rule 15(a), Fed.R.Civ.P. provides that leave to amend "shall be freely given when justice so requires." Leave may be denied, however, if amendment would be futile. E.g., Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). I conclude that the proposed amendments fail to address the jurisdictional defects in *1146 BP's first amended complaint and are therefore futile. The proposed second amended complaint does not allege that Sopo Engineering engaged in any conduct that would subject it to this court's jurisdiction despite the lack of jurisdiction over Sopo. Nor does the addition of conspiracy allegations affect the issue of jurisdiction, because jurisdiction is lacking even assuming that the acts of each alleged co-conspirator is attributable to the others. Moreover, the deletion of Nooter obviously has no effect on the issue of whether jurisdiction can be obtained over the Chinese defendants. Accordingly, I will deny the motion to amend.

D. BP's Motion to Compel Jurisdictional Discovery

BP's motion to compel seeks five types of information. First, it seeks correspondence between Sopo and SPECO. Secondly, it seeks correspondence between SPECO and the United States vendors. Third, it seeks technical specifications sent to the United States vendors, including specifications allegedly retrieved by Sopo from the vendors after BP filed suit. Fourth, BP seeks evidence of Sopo's contacts with U.S. vendors concerning a second acetic acid plant. Finally, it seeks deposition testimony of Sopo representatives knowledgeable about Sopo employees' visits to the United States.
The correspondence between Sopo and SPECO would at best establish an agency relationship or the existence of a conspiracy between Sopo and SPECO. BP has not argued that this discovery would be relevant to any other issues. As shown above, jurisdiction over Sopo is lacking regardless of whether SPECO's acts are attributable to it. This discovery would thus be unlikely to cure the jurisdictional defects in the first amended complaint.
Likewise, the correspondence between SPECO and the United States vendors would not help BP overcome the obstacles to jurisdiction. At most, this information would reveal that SPECO or Sopo contracted with a number of United States vendors, sent communications to the vendors, and visited the vendors in the United States in order to procure equipment for the 921 plant, and that the communications sent to the vendors contained BP's trade secrets. As I have previously noted, I lack jurisdiction over Sopo even assuming the above facts are true.
The technical specifications themselves are even less likely than the correspondence to correct the jurisdictional defects in the first amended complaint. It is difficult to imagine what this discovery would establish other than that Sopo sent documents incorporating BP's technology into the United States. Again, I lack jurisdiction over Sopo even assuming that it did so.
BP alleges that after the filing this action, Sopo engaged in procurement activity in the United States in connection with a new acetic acid plant. This new procurement activity is identical in nature to the activities that I have already determined are insufficient to establish jurisdiction. Thus, evidence of new procurement would not overcome the barriers to jurisdiction in this case.
Finally, BP seeks deposition evidence concerning Sopo's employees' visits to the United States in connection with the vendor contracts. At most, this evidence would establish that Sopo employees took an active part in the procurement of equipment from the United States vendors. My analysis of jurisdiction under the FSIA assumes as much. Moreover, BP has already deposed three Sopo employees and has questioned all three about this matter. Because none of the information that BP seeks would cure the jurisdictional defects *1147 in the first amended complaint, I will deny the motion to compel.
Accordingly,
IT IS HEREBY ORDERED that the motion to dismiss filed by defendant Jiangsu Sopo Corporation (Group) Ltd. [# 98] is granted.
IT IS FURTHER ORDERED that BP Chemical's motions to amend [# 113] and to compel jurisdictional discovery [# 121] are denied.
A separate Order of Dismissal as to defendants Jiangsu Sopo Corporation (Group) Ltd. and Zhenjiang Chemical Plant is entered this same date. The hearing for entry of default judgment as to defendant Shanghai Petrochemical Engineering Co. remains set for June 28, 2001.
NOTES
[1] The purported trade secrets relate to BP's methanol carbonlyation process for synthesizing acetic acid. This technology has been the subject of other litigation in the United States. See, e.g., BP Chemicals, Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254 (3d Cir. 2000).
[2] In addition to Sopo, SPECO, and Nooter, the complaints name Zhenjiang Chemical Plant as a defendant. Sopo asserts that it was formerly known by this name, and that Zhenjiang Chemical is not a separate entity from Sopo. BP's pleadings name Zhenjiang Chemical as a wholly-owned subsidiary of Sopo.