David H. LEMPERT, Plaintiff,

v.

**REPUBLIC OF KAZAKSTAN, MINISTRY OF JUSTICE,** Defendant.

No. CIV.A. 00–1820(JR).

United States District Court, District of Columbia.

Sept. 30, 2002.

Paul Rosenzweig, c/o Heritage Foundation, Theodore M. Cooperstein, Theodore

M. Cooperstein, P.C., Washington, DC, for Plaintiff.

Mark P. Lunn, Coudert Brothers LLP, Washington, DC, for Defendant.

### *MEMORANDUM*

ROBERTSON, District Judge.

In this case, an American attorney and consultant seeks damages for breach of contract and unjust enrichment from the Ministry of Justice for the Republic of Kazakstan, a state agency under the laws of Kazakstan. He alleges that the Ministry of Justice (MOJ) wrongfully refused to pay his full consulting fee. His claim is for $21,600 plus prejudgment interest. MOJ moves to dismiss on four grounds: 1) lack of subject matter jurisdiction because MOJ enjoys sovereign immunity; 2) lack of personal jurisdiction because MOJ does not have sufficient contact with the District of Columbia; 3) an agreement between the parties that Kazakstan would be the forum for resolving disputes; and 4) forum non conveniens. For the reasons set forth below, the defendant's motion to dismiss will be granted on the ground of sovereign immunity.

### I.

On a motion to dismiss for lack of subject matter jurisdiction, the Court may consider matters outside the pleadings. The plaintiff has the burden of establishing the Court's jurisdiction by a preponderance of the evidence and may use affidavits and matters of public record. The truth of an allegation of jurisdictional fact contested by the defendant is not assumed on a motion to dismiss, and the court settles any contested jurisdictional facts. *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir.2000).

In this case, it is undisputed that the parties entered into a contract in Kazakstan for consulting services on July 31, 1997.[1] Plaintiff's task was to travel to Kazakstan and prepare a "Legal Education Component Assessment" with recommendations for improving the quality of legal education and training of law students and government officials in Kazakstan. Def.'s Mot. Dismiss, Ex. A2. This task was part of a larger legal reform project undertaken by Kazakstan, and part of a plan to help Kazakstan obtain loans from the World Bank. Lempert's recommendations were to be based upon consultations with various government officials and other individuals in Kazakstan; upon findings that had previously been made by a local consultant and MOJ; and upon information provided by MOJ, the World Bank, and other resources. Def.'s Mot. Dismiss, Ex. A3. Lempert was in Kazakstan for four weeks starting in late July 1997 working on the report. His assignment was to be completed by August 29, 1997 or by "such other date as mutually agreed." Def.'s Mot. Dismiss, Ex. A2. MOJ agreed to pay Lempert a total of $27,000, payable in three portions. It paid a first installment of 203,715 tenge (Kazakstani currency, equivalent to $2,700 U.S. dollars) in Kazakstan upon the signing of the contract and another installment of $2,700 on August 5, 1997 in U.S. currency forwarded to the plaintiff's bank account in Washington, D.C., leaving $21,600 as the outstanding payment. Def.'s Mot. Dismiss, Ex. A. Section 2 of the contract provided that "[the] contract, its meaning and interpretation, and the relations between the [p]arties shall be governed by the [l]aws of Kazakstan," and section 10 provided that any dispute arising under the contract would be "resolved in accor-

---

1. There is nothing in the contract, labeled "Consultants' (sic) Contract," that created an employer-employee or agency relationship.

dance with the legislation of the Republic of Kazakstan." Def.'s Mot. Dismiss, Ex. A2.

The remaining facts are disputed, although none of the disputed facts bears on the immunity question. According to Lempert, the parties negotiated over most of the contract terms and the draft work plan by correspondence, before he traveled to Kazakstan. He says that he submitted an English language version of the report to MOJ before he left Kazakstan and a Russian language version on or about September 5, 1997. He further states that the remaining payment of $21,600 owed to him was due on November 11, 1997 when he made final changes to the report. On December 14, 1997, Lempert notified MOJ that payment was overdue. He alleges that in response to his requests for payment, MOJ asked him to make modifications of his findings that were antithetical to his professional assessment of the objectives of the legal reform project. He also claims that a MOJ official asked him to pay a kickback of his contract fee when he first arrived in Kazakstan.

MOJ emphasizes that the contract was to be performed in Kazakstan and that most of the preliminary negotiations took place when Lempert was in Kazakstan. It denies the plaintiff's allegations about its reasons for not making the final payment and also denies charges of a requested kickback. A letter to Lempert from a MOJ official expressing dissatisfaction with Lempert's report suggests that the quality of the report was deemed inadequate and that Lempert's recommendations were inconsistent with the objectives of the legal reform project. Pl.'s Resp. to Def.'s Mot. Dismiss, Ex. N. MOJ also points to the World Bank's findings that Lempert's allegations were groundless and that his report was not in full compliance with the requirements of the contract. Def.'s Mot. Dismiss, Ex. A8.

## II.

### Foreign Sovereign Immunities Act

The Foreign Sovereign Immunities Act (FSIA) "provides the sole basis for obtaining subject matter jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The Act recognizes the immunity of foreign states from suit in the United States, except in specific enumerated kinds of cases. 28 U.S.C. § 1604. A foreign state is not immune in any action that is based: (1) upon a commercial activity carried on in the United States by the foreign state; (2) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2). "Commercial activity" is defined, unhelpfully, as "commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e). It may be "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The commercial character is to be determined by reference to the nature of the conduct, act, or transaction rather than its purpose. *Id.* None of these three exceptions to jurisdictional immunity under 28 U.S.C. § 1605(a)(2) applies to this case.

### A. Commercial Activity Carried on in the United States

Under 28 U.S.C. § 1603(e) and the first clause of 28 U.S.C. § 1605(a)(2), a district court has jurisdiction of an action based upon a commercial activity carried on in the United States by the foreign

state and having substantial contact with the United States. The "based upon" requirement refers to "those elements of the claim that, if proven, would entitle a plaintiff to relief under his theory of the case," and "calls for something more than a mere connection with, or relation to, commercial activity." *Saudi Arabia v. Nelson,* 507 U.S. 349, 356–57, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). The elements of Lempert's claim that would entitle him to relief are his performance and MOJ's non-payment, both of which were in Kazakstan. The preliminary negotiations between the parties and solicitation of the plaintiff's services were not the "commercial activity" upon which the claim is based. *See Janini v. Kuwait University,* 43 F.3d 1534, 1536 (D.C.Cir.1995); *In re Papandreou,* 139 F.3d 247, 253 n. 3 (D.C.Cir. 1998) ("Certainly we do not suggest that a breach of contract action could be 'based upon' the solicitation, or that the U.S. solicitation constituted the commercial activity on which the suit is based.").

MOJ's correspondence with Lempert prior to his travel to Kazakstan did not establish "substantial contact" with the United States within the meaning of FSIA.[2] *See In re Papandreou,* 139 F.3d at 253 (rejecting "recruitment efforts in the U.S. as a basis for jurisdiction over a contract for employment abroad" and holding that "acts that are not themselves commercial transactions, but that are merely precursors to commercial transactions" do not give rise to jurisdiction). "Some degree of solicitation in the U.S. might satisfy the 'substantial contact' requirement," *id.,* but not the degree shown on this record: there were no meetings between the parties in the United States, no significant availment of resources in this country to persuade Lempert to enter into the contract, and no regular recruitment efforts here to obtain an American-based consultant for the legal reform project report. *See Maritime Int'l Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1109 (D.C.Cir.1982) (substantial contact requirement was not met even where a representative of the foreign sovereign engaged in two business meetings with the plaintiff in the United States); *Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1513 (D.C.Cir.1988) (isolated or transitory contacts with the United States do not satisfy the substantial contact requirement). *But see Virtual Defense & Dev. Int'l, Inc. v. Republic of Moldova,* 133 F.Supp.2d 1, 5 (D.D.C.1999)(reaching a contrary result on a distinguishable set of facts).

## B. Act Performed in the United States

■ There is no sovereign immunity from suit for an action that is based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). This category is limited to "the acts (or omissions) ... which in and of themselves are sufficient to form the basis of a cause of action." *Zedan,* 849 F.2d at 1514 (citing H.R.Rep. No. 1487, at 19 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6618); *see also Maritime Int'l Nominees Establishment,* 693 F.2d at 1104 n. 16 (second clause had no applicability to breach of contract claim because the alleged breach was not claimed to have been performed in the United States). The second clause is not applicable to this case. The "act" on which the plaintiff's action is "based"— MOJ's alleged breach of the contract—is

---

**2.** Even though § 1605(a)(2) appears to require *both* a commercial activity carried on in the United States *and* substantial contact with the United States, *In re Papandreou* suggests that "substantial contact" may be enough. The second prong of the § 1605(a)(2) test is analyzed here, accordingly, out of an abundance of caution.

not claimed to have been "performed in the United States."

## C. Act Outside the United States Causing Direct Effect in the United States

■ A foreign state is not immune from jurisdiction where an act occurs outside this country and causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2). An effect is direct if it follows "as an immediate consequence of the defendant's ... activity." *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 618, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). Here, the plaintiff's theory is that MOJ's refusal to pay caused a direct effect in the United States, namely, his financial loss.[3] But the cases on which plaintiff relies does not support his argument. A refusal to pay for services performed by an American plaintiff usually does not meet the direct effect requirement. In *Zedan,* Saudi Arabia's promise to forward money to the plaintiff did not cause a direct effect in the United States, even though the plaintiff was a U.S. citizen and had returned to America, because there was no assurance to send the payment specifically to the United States. 849 F.2d at 1514–15. *See also Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1146–47 (D.C.Cir.1994) ("direct effect" exception to sovereign immunity not triggered because United States location was not designated as place of payment). A refusal to pay may cause a direct effect if there is a contractual provision for payment to be made in or sent to the United States, but there was no such contractual provision here. Neither was there a "longstanding consistent customary practice" to send payment to the United States, which Judge Wald thought might be enough, *Goodman Holdings,* 26 F.3d at 1147 (Wald, J., concurring).

As there is no jurisdiction because the defendant is immune, it is not necessary to resolve the forum non conveniens issue, but it appears that Kazakstan would indeed be the appropriate forum to apply Kazakstani law (the choice of law by the parties) to a simple contract dispute for $21,600, an amount which would be exceeded by the costs of compelling several witnesses from Kazakstan to testify in the United States.

The defendant's motion to dismiss on the ground of sovereign immunity must be **granted**. An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, the defendant's motion to dismiss [# 9] is **granted**. This is a final, appealable order.

---

**3.** Plaintiff's other "direct effect" argument, that MOJ's alleged dissatisfaction with the report caused a direct effect because it harmed his reputation, does not merit analysis. There is nothing in the record to support this claim aside from plaintiff's own subjective feelings that his reputation has been harmed.