KAREN LECRAFT HENDERSON, Circuit Judge, concurring:
While not necessary to our holding, see Cicippio v. Islamic Republic of Iran, 30 F.3d 164, 168-69 (D.C.Cir.1994), cert. denied, 513 U.S. 1078, 115 S.Ct. 726, 130 L.Ed.2d 631 (1995), I believe that the district court can be affirmed just as soundly on the ground that the Province’s activity had no direct effect in this country within the meaning of the third clause of section 1605(a)(2) of FSIA. Rong claims that the Working Committee’s taking of Brilliance Holdings stock, his removal from executive and management positions in Brilliance Holdings and the suspension of trading of Brilliance Holdings shares on the NYSE deprived him of financial assets, compensation, dividends and corporate control and thus had a direct effect in the U.S. A mere financial loss by a resident of the United States does not constitute a “direct effect” in the United States. Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1514 (D.C.Cir.1988) (plaintiffs presence in U.S. was not direct effect because “financial hardship fortuitously suffered in the United States is not a direct effect of Saudi Arabia’s failure to honor a contract in Saudi Arabia”) (emphasis in original); see also Soudavar v. Islamic Republic of Iran, 67 Fed.Appx. 618, 619 (D.C.Cir.2003) (unpublished judgment). Unlike the allegations of direct effect in Foremostr-McKesson— not merely nonpayment but also cessation of the “flow of capital, management personnel, engineering data, machinery, equipment, materials and packaging” between Iran and the United States, see Foremostr-McKesson, 905 F.2d at 451— here the direct effect involves only the monetary loss of a Chinese national resident in the U.S. In addition, Broadsino’s status as a foreign corporation does alter the no “direct effect” determination. See Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republicana Mexicana, 923 F.2d 380, 390 (5th Cir.1991) (foreign corporation’s monetary loss in U.S. insufficient for direct effect in United States under section 1605(a)(2)).
As to his other claims of direct effect, Rong argues that the direct effect in Foremost-McKesson — i.e., the interference with the plaintiffs right to participate in management and as an active investor and the illegal installation of new directors by the foreign sovereign — is on all fours with the direct effect here. McKesson, however, was an American corporation while Broadsino is incorporated under the laws of Hong Kong. See Foremost-McKesson, 905 F.2d at 441; see also Int’l Hous. Ltd. v. Rafidain Bank Iraq, 893 F.2d 8, 11 (2d Cir.1989) (“The fact that some or all of IHL’s principals or officers may be United *892 States citizens does not outweigh the facts that they organized the company outside the United States and that its losses in the instant transaction thus occurred elsewhere.”) Weltover is not to the contrary. Weltover, 504 U.S. at 619, 112 S.Ct. 2160 (U.S. was “place of performance for Argentina’s ultimate contractual obligations”; rescheduling of obligations therefore had direct effect in U.S. because “[m]oney that was supposed to have been delivered to a New York bank for deposit was not forthcoming”); see also Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos, 712 F.Supp. 383, 389-90 (S.D.N.Y.1989) (direct effect in United States found when commercial activity of Bolivian government’s instrumentality occurred outside U.S. because contract was to be performed primarily in United States and foreign buyer utilized U.S. banking resources to facilitate payment). In the Second Circuit’s Weltover decision (unanimously affirmed by the Supreme Court), the court declared that courts “often look to the place where legally significant acts giving rise to the claim occurred” to determine the location of a “direct effect.” Weltover, Inc. v. Argentina, 941 F.2d 145, 152 (2d Cir.1991); see also United World Trade, Inc. v. Mangyshlakneft Oil Prod,. Ass’n, 33 F.3d 1232, 1239 (10th Cir.1994), cert. denied, 513 U.S. 1112, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995) (rejecting American citizen’s claim that his lost profits caused by foreign state’s alleged breach of oil contract entered into by parties in Moscow specifying delivery of oil to Sicily with payment in Paris constituted direct effect under section 1605(a)(2): “[ajppellant would have us interpret § 1605(a)(2) in a manner that would give the district courts jurisdiction over virtually any suit arising out of an overseas transaction in which an American citizen claims to have suffered a loss from the acts of a foreign state. We think that the language of § 1605(a)(2) limiting jurisdiction to cases where there is a ‘direct effect’ in the United States makes it unlikely that this was Congress’ intent”) (emphasis in original); cf. I.T. Consultants, Inc. v. Republic of Pakistan, 351 F.3d 1184, 1190 (D.C.Cir.2003) (Pakistan’s failure to meet payment obligation under contract providing for payment in Virginia had direct effect in U.S. because “the involvement of a U.S. bank was immediate and unavoidable”). Neither Rong’s monetary loss nor his loss of control over Brilliance Holdings caused the necessary direct effect in the U.S. to allow him to sue the Liaoning Province. Zedan, 849 F.2d at 1515 (injury suffered in foreign country that has “eventual” effect in U.S. does not constitute direct effect). Nor is the loss allegedly suffered by third-party investors in the United States as a result of the one-day suspension of trading on the NYSE sufficient to establish a direct effect. See Corzo v. Banco Central de Reserva del Peru, 243 F.3d 519, 525-26 (9th Cir.2001) (if cause of action arises entirely in foreign country, “[t]he fact that United States computer companies might have been affected by ... breaches [resulting from Peruvian bank’s act] is jurisdictionally irrelevant”).